# EMERGENCY MOTION FOR TRO

**UNITED STATES DISTRICT COURT**
**Southern District of New York (White Plains Division)**

**Javaid Aziz, individually and as attorney-in-fact for Jamila K. Butt,**
Plaintiffs,
v.
**Neelofar K. Butt, et al.,**
Defendants.

**Civil Action No. _____**

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER (EX PARTE)

Plaintiffs Javaid Aziz and Jamila K. Butt respectfully move ex parte for a Temporary Restraining Order to protect Jamila K. Butt's health and familial association. Jamila (age 87) is currently confined at Brightview Senior Living in Tarrytown, NY, under the control of Defendant Neelofar Butt. Jamila is isolated from her only close family (her brother Javaid, also an elder abuse victim is 81-year-old), suffers emotional distress, and is at risk of potential abuse or wrongful relocation if Neelofar is not restrained. Immediate relief is needed.

To obtain a TRO, Plaintiffs must show they are likely to succeed on the merits (or raise serious questions) and will suffer irreparable harm absent relief, and that the balance of equities and public interest favor intervention. Plaintiffs easily meet these standards: (1) Plaintiffs have demonstrated both federal and state claims (including RICO and civil rights violations) with strong supporting facts; (2) Jamila faces imminent irreparable injury as described below; (3) the balance of harms and public interest overwhelmingly favor preserving Jamila's health and family ties; and (4) FRCP 65(b) is satisfied, since giving notice to Defendants would enable them to thwart relief. In the Second Circuit, a strong showing of irreparable harm can compensate for any lesser showing of success.

**I. Legal Standard for TRO:** A TRO is an extraordinary remedy to prevent immediate irreparable injury. The standard mirrors that for a preliminary injunction: the movant must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if relief is denied, (3) that the balance of hardships tips in the movant's favor, and (4) that the injunction is in the public interest. When, as here, the TRO is sought ex parte, Plaintiffs must also satisfy Fed. R. Civ. P. 65(b)(1)(A): specific facts in a verified complaint or affidavit must clearly show that immediate and irreparable injury will result before Defendants can be heard. Courts may then waive notice. Plaintiffs have satisfied every element.

**II. Irreparable Harm:** Jamila faces an immediate threat of irreparable injury. She has been unjustly isolated from her family for years, contrary to her wishes, and each day apart causes emotional harm that cannot be undone. No monetary award can compensate for the lost companionship and joy of time with her brother. Moreover, if Defendants learn of this suit,

Neelofar may retaliate: she could suddenly move Jamila to a distant or more restrictive facility, or consent to drastic medical measures (heavy sedation or psychiatric hold) to keep Jamila isolated. Jamila's frail health could be severely jeopardized by such actions. Courts recognize that threats to personal liberty, health, or familial association constitute irreparable harm. Jamila's continued confinement as a prisoner (she has not been allowed to see any friend or Javaid since February 12. 2020) and her phones were taken away by Neelofar in October, 2020. And ongoing emotional distress plainly satisfy the requirement of imminent, irreparable injury.

**III. Likelihood of Success on the Merits:** Plaintiffs' Verified Complaint details claims with substantial evidence. In the civil rights claim, the evidence (Jamila's written directives, admissions of no guardianship, etc.) shows Defendants deprived Plaintiffs of due process and the right to familial association (for instance, Neelofar obtained the 2020 TRO by fraud). On the abuse of process and malicious prosecution claims, the record (false accusations, vacated orders, dismissed cases) strongly indicates Defendants abused the courts to achieve improper ends. Neelofar's 18-page POA is highly suspect; if invalidated, Neelofar had no lawful authority to sell Jamila's home – essentially defrauding Jamila of her property. Plaintiffs thus have a strong likelihood of proving each claim (or at minimum serious questions on the merits).

**IV. Balance of Equities:** The balance of hardships heavily favors Plaintiffs. Without a TRO, Jamila remains at Defendants' mercy and may be irreparably harmed. With a TRO, Defendants merely have to obey the law and refrain from unlawful acts; they lose nothing but the ability to continue abusive conduct. Requiring them to respect Jamila's rights and permit family contact imposes no undue hardship. In fact, the requested TRO would *preserve* the status quo ante (Jamila's safety and family ties), which is in everyone's interest. Defendants suffer no cognizable harm from an order that simply prevents them from hurting Jamila. Equity thus compels granting relief to protect a vulnerable elder.

**V. Public Interest:** The public interest strongly supports issuance of the TRO. Federal and state policies prioritize protection of the elderly and families. Courts also have a public duty not to be unwitting tools of abuse. Granting this TRO prevents courts from being used to facilitate elder abuse, aligning with the public interest in safeguarding vulnerable individuals. Requiring an ex parte procedure in this case is justified to prevent Defendants from exploiting the delay period (for example, by secluding or relocating Jamila upon learning of the lawsuit). In sum, protecting Jamila from harm and preserving family integrity advances the public interest.

**VI. Security/Bond:** Federal Rule of Civil Procedure 65(c) permits the Court to require security. Plaintiffs request a nominal bond or waiver. Javaid is an elderly pro se plaintiff of modest means seeking only to protect his sister; the requested relief imposes no financial loss on Defendants, only curtailing wrongful acts. Javaid has spent his life savings (approximately $75,000), on attorney fees, trying to get justice for his sister since February, 2020. Courts routinely waive or reduce bond requirements in civil-rights and public-interest cases. Thus, the Court should set a nominal bond (e.g., $100) or none at all.

**Conclusion:** Plaintiffs have demonstrated (and aver by affidavit) the imminent irreparable harm to Jamila, the merits of their claims, and the favorable balance of equities. The Verified Complaint and supporting affidavit show facts justifying emergency intervention. Plaintiffs

therefore request that the Court grant the ex parte Temporary Restraining Order as detailed in the proposed order, and promptly set a hearing to convert it to a preliminary injunction.

Dated: July 9, 2025.
Respectfully submitted,

Javaid Aziz (Pro Se)
On his own behalf and as Attorney-in-Fact for Jamila K. Butt
131 Reed Street, Cambridge, MA 02140
Tel: 617-642-9058; Email: javaid.aziz@gmail.com

*Javaid Aziz*
_____

Javaid Aziz