# AFFIDAVIT OF JAVAID AZIZ

**UNITED STATES DISTRICT COURT**
**Southern District of New York (White Plains Division)**

**Javaid Aziz, individually and as attorney-in-fact for Jamila K. Butt,**
Plaintiffs,
v.
**Neelofar K. Butt, et al.,**
Defendants.

**Civil Action No. _____**

## AFFIDAVIT OF JAVAID AZIZ IN SUPPORT OF TEMPORARY RESTRAINING ORDER (TRO)

I, Javaid Aziz, being duly sworn, declare as follows under penalty of perjury:

**Parties and Capacity:** I am the Plaintiff in this action and the brother of co-Plaintiff Jamila K. Butt. I am 81 years old and reside at 131 Reed Street, Cambridge, MA. My sister Jamila is 87. I submit this affidavit in support of Plaintiffs' Emergency Motion for a Temporary Restraining Order. I have personal knowledge of the facts herein. Due to the emergency and Jamila's inability to act freely, I am proceeding pro se on my own behalf and as her attorney-in-fact/next friend.

**Immediate Danger to My Sister:** Jamila is currently confined at Brightview Senior Living in Tarrytown, NY, under Neelofar's control, and is isolated from our family. Jamila is in immediate danger. Every day of separation causes her profound emotional harm. I fear that if Neelofar learns of this lawsuit, she may retaliate by forcibly transferring Jamila to a remote facility, or subjecting her to unnecessary medical interventions (e.g., heavy sedatives or emergency psychiatric holds) to keep her silent. Such actions could be life-threatening given Jamila's frailty. The ongoing unlawful restrictions on Jamila constitute irreparable harm that only this Court can halt. We need an emergency order **now** to protect my sister's safety and restore our ability to communicate.

**History of Abuse and Coercion:** Over the past several years (2017–2025) I have documented a systematic pattern of elder abuse and fraud by my niece, Neelofar. In 2019–2020, Neelofar set out to take over Jamila's affairs. For example, on September 9, 2019, Jamila wrote a letter explicitly instructing "Do not sell my house during my lifetime." Around that time, Neelofar produced an 18-page Power of Attorney claiming authority over Jamila. Jamila never mentioned signing it, and I believe the signature was forged. Jamila stated to Javaid that she never signed this POA to Neelofar herself. In February 2020, before Neelofar could take effect, Jamila signed a valid short-form POA appointing me (Javaid) to help her with her affairs, reflecting her true wishes. Jamila also retained independent counsel to help protect her home. These facts show that Jamila did *not* want Neelofar in charge, but Neelofar obtained fraudulent documents to seize control.

1

Armed with the fake POA, Neelofar then sold Jamila's Westchester house in early 2021 without Jamila's knowledge. Jamila was heartbroken when she later learned of the secret sale; she lost her home of decades and all the family photos and records stored there. In the house there were Jamila's legal papers. I will try to find if I have copies of any of those and present them to the Court and the Jury at a later time. This financial exploitation cannot be undone – once the home is gone and Jamila's personal property scattered, there is no real remedy. Neelofar misled local authorities into thinking she was Jamila's guardian, so no one stopped her. This demonstrates extreme elder abuse.

I give one example of mistreatment of Jamila. Jamila was living alone in a one bedroom apartment (unit #238) at Brightview Senior Living. She had no Dementia on this date. Dementia patients do not live in separate apartments. Jamila had arranged with a friend and a Notary Public to sign some papers to get out of the clutches of Neil Reig, on October 26 (or near), 2020. She was found in her apartment on the floor with two broken arms. I reproduce below from the Transcript of Family Court dated December 11,2020. Mangold was Neelofar's Attorney at that time.

---

Butt vs. Aziz - 11/12/2020

(A)Aarons Court Reporting -914- 621-7271
175 Main St., Ste. 515, White Plains, NY 10601

MR. MANGOLD: Okay. I just want to make the
1 Court aware of the fact that Jamila Butt, the mother of my
2 client, on October 26th, fell at her assisted living
3 facility. She's currently being treated at a hospital.
4 She suffered two broken arms, a broken cheek, and a broken
5 nose. So I want you to be aware of that, and I'm
6 requesting that the Court could expand the existing
7 Temporary Order of Protection to include that the
8 respondent stay away, not only from her assisted living
9 facility, but any hospital or rehabilitation facility where
10 she's being treated.

---

The Court can see the cruelty towards Jamila and Javaid on the basis of a Fraud TRO.As I was writing this complaint an attorney sent me a stack of papers on which Jamila signature appears. But the name of Notary etc is redacted. From these papers it appears that Neil Reig was making backdated papers (with dates of November 5, 2011; January 8, 2013; November 15,2011). And many in 2017, 2018, 2019. Due to the sensitive nature of these I am not attaching them here. I had wondered from February 25, 2020, to now, as to why such a ferocious effort to keep me away from my sister?All I can understand is that it could become a criminal complaint if Javaid

is able to see his sister. In the light of this I fear harm to both Jamila and Javaid (if I come to visit my sister without the TRO), requested here.

**Legal Harassment and Perjury in Court:** Neelofar has lied under oath in multiple legal proceedings against us. For instance, on February 25, 2020 (Family Court), she falsely swore that I had "abducted" Jamila and that Jamila was afraid of me. In fact, Jamila was desperately trying to reach me for help that week. Based on Neelofar's lies, Judge Humphrey issued a one-year no-contact Order, isolating Jamila and forbidding me to see her. I was effectively muzzled for two years. Whenever I tried to file motions or speak, the existence of that illegal TRO prevented the courts from hearing my pleas. Even after Judge Humphrey recused (March 2022), we learned Neelofar admitted on record she had never been Jamila's guardian. This vindicated Jamila's claim that Neelofar was acting without authority. Yet still, no court restored Jamila's rights or my access. Instead, Neelofar continues to deploy courts as a weapon.

For example, in early 2025 Neelofar (through her lawyer Rizzo) initiated a Massachusetts court action to enforce a disputed $21,000 judgment against me. That was a direct retaliation for my signals that I would continue to advocate for Jamila. Similarly, in late 2024 Neelofar filed a baseless lawsuit against me in New Hampshire (Grafton Cty. No. 215-2024-CV-00010). That New Hampshire case was initially dismissed by default against her, but I have been informed the default was vacated and the litigation is now active. These harassment suits – in MA, NH, and NY – serve no genuine purpose but to harass us and drain our resources. Whenever I make a move to help Jamila, Neelofar escalates by filing another suit to silence me.

**Current Status of Jamila (Medical and Emotional):** As of this month, Jamila remains at Brightview in Tarrytown, under Neelofar's supervision. Prior to Neelofar's intervention, Jamila was managing with in-home care and expressed coherent wishes to stay in her own home. And eat Kosher or Islamic Halal food. Now, due to prolonged isolation, Jamila has become withdrawn, depressed, and sometimes confused – a decline consistent with "institutionalization" effects or medication side effects. A staff member confided that Jamila now speaks little and appears depressed. I am deeply concerned that if Neelofar feels threatened by our federal case, she may have Jamila forcibly reevaluated and moved into a more locked-down setting (like a dementia care unit far away) under the guise of an emergency. This would effectively make my sister unreachable. My last clandestine call with Jamila (late 2024) ended with her pleading "Please take me home." I fear that if this Court does not act immediately, I may never get another chance to reunite with my sister while she is still alive and competent.

**Reasons for Ex Parte Relief (Why No Notice):** Giving notice of this motion would defeat its purpose. In past instances, anytime I or my counsel tried a "cooperative" approach (even simply requesting a supervised visit), Neelofar used that knowledge to retaliate – she would tighten restrictions instead of accommodating Jamila's needs. If Neelofar suspects a federal action, she is likely to act quickly and irreversibly: she could, for example, get an emergency hospital evaluation or sedate Jamila, making access impossible. She could also preemptively seek a new restraining order against me in state court (even falsely accusing me of contempt) to keep me at bay. Such maneuvers would create conflicting orders and delay any real relief, while Jamila remains isolated. Under Fed. R. Civ. P. 65(b)(1)(A), this is exactly the scenario where notice should be excused – immediate and irreparable injury will result before Defendants can be heard.

Given Neelofar's track record of using litigation as a weapon, ex parte relief is both justified and necessary to protect Jamila now.

**Relief Sought (Immediate Needs):** Plaintiffs seek a Temporary Restraining Order that effectively freezes the harmful status quo, then lifts the illegal restrictions. In short, the Court should **keep Jamila safe where she is** but **remove Neelofar's barriers**. The proposed TRO would, among other things:

- **Prohibit Neelofar from moving Jamila out of New York or hiding her.** (I fear she might send Jamila to an unknown facility out of state.)
- **Permit immediate visitation and communication between Jamila and Javaid.** (Neelofar should not be allowed to prevent them from talking or seeing each other.)
- **Preserve the current care arrangements, subject to this Court's oversight.** (Stop any new transfers or surgeries unless Jamila independently and freely consents.)
- **Prohibit Neelofar from accessing or disposing of Jamila's assets.** (Freeze any account changes, transfers, or sales – e.g., of Jamila's property or personal belongings.)

I have attached a proposed TRO order listing these specific provisions. Plaintiffs will immediately serve all Defendants upon the Court's signing of the TRO.

**Conclusion:** The above facts demonstrate that Jamila is in immediate and irreparable danger at Defendants' hands, and that Plaintiffs have meritorious claims. I respectfully request that this Court issue the requested ex parte TRO to protect Jamila and Plaintiff Javaid as outlined, and schedule a prompt hearing to convert it into a preliminary injunction.

Executed on **July 9, 2025**, in Cambridge, Massachusetts.

*Javaid Aziz.*

_____

Javaid Aziz

Subscribed and sworn to before me on this ___ day of _____ 2025.

Notary Public / Justice of the Peace
My commission expires: _____

# Exhibit List (Supporting Evidence)

**(not attached, defendants have these and will be provided to the court and the jury)**

- **Exhibit A – Jamila's Directive Letter (Sept 9, 2019):** A one-page hand-signed letter by Jamila K. Butt, dated 9/9/2019, stating her wishes regarding her home (e.g., *"Do not sell my house during my lifetime… I want to live there with help, or leave it to my children…"*).

- **Exhibit B – Retainer Agreement with Attorney Khalid Azam (Oct 1, 2019):** A copy of the retainer or engagement letter signed by Jamila hiring Khalid M. Azam, Esq. for legal services.

- **Exhibit C – Power of Attorney from Jamila to Javaid (Feb 12, 2020):** The limited Power of Attorney document (4 pages) executed by Jamila naming Javaid Aziz as her agent on 2/12/2020.

- **Exhibit D – Contested 18-page Power of Attorney (2017, Jamila to Neelofar):** The complete POA that Neelofar claims Jamila signed, naming Neelofar as attorney-in-fact (likely dated sometime in late 2017).

- **Exhibit E – Westchester Family Court Temporary Order of Protection (Feb 25, 2020):** A copy of the ex parte TOP issued by Judge Wayne Humphrey, listing Neelofar (on behalf of Jamila) vs. Javaid Aziz, with the date and terms (no contact order).

- **Exhibit F – Family Court Petition/Affidavit of Neelofar (Feb 2020):** The initial sworn petition or affidavit that Neelofar filed to get the TRO.

(Note: The Defendants have access to all the list of evidence in Court Docket numbers as listed below.)

- Westchester County, Family Court, NY.

    **Docket No. :** 160818/0-01899-20;
    160818/0-01899-20/20B;
    160818/0-01899-20/20C;

160818/0-01899-20/21D.

- Westchester County, Supreme Court, NY.

    Docket No.: 54798/2021
    Index No.: 64749/2021
    New York Supreme Court, Appellate Division – Second Department
    Docket No.: 2024-09208
    (Westchester County Clerk's Index No.: [64749/2021](64749/2021))

- Commonwealth of Massachusetts,

    Cambridge District Court,
    Civil No. 2452CV000556

- The State of New Hampshire

    Superior Court
    Grafton County
    Case No. 215-2024-CV-00010

**Exhibit G – Record of Appeal (& additional documents to be added)**

All exhibits are in Court dockets in New York, New Hampshire and Massachusetts and defendants have access to those. It would be waste of Court time to add them here. In appeal case all documents are listed under this link:

**Google Drive Shared Folder Link:**
https://drive.google.com/drive/folders/1Mp4QVHBoq0Ko3shs1Ulglj85Iefl9SIk?usp=sharing

The Plaintiffs will provide the Federal Court and the Jury all exhibits when needed. Also, the exhibits may contain personal/confidential information.