# UNITED STATES DISTRICT COURT

**SOUTHERN DISTRICT OF NEW YORK**

**WHITE PLAINS DIVISION**

**Case No. 7:25-cv-05789-JGLC**

**Hon. Jessica G.L. Clarke**

**JAVAID AZIZ, individually and as attorney-in-fact/next friend for JAMILA K. BUTT,**

**Plaintiffs,**

**V.**

**NEELOFAR K. BUTT, NEIL H. REIG, ESQ.,**

**Defendants.**

**FIRST AMENDED VERIFIED COMPLAINT**

**I. Procedural Notes**

Plaintiff respectfully submits this First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1)(A), prior to service, to incorporate newly confirmed statutory violations under New York Mental Hygiene Law Article 81. Plaintiff further respectfully withdraws all previously filed motions in connection with the original complaint and reserves the right to refile appropriate motions in support of this First Amended Complaint.

**II. Preliminary Statement**

This is a civil rights action brought under 42 U.S.C. §1983 to redress the deprivation of constitutional rights under color of state law. Plaintiff Javaid Aziz, acting also as a friend and advocate for Jamila K. Butt, an elder person subjected to isolation and control, alleges that Defendants Neelofar Butt and Neil Reig used Family Court proceedings and a Power of Attorney to bypass New York's statutory guardianship process under Mental Hygiene Law Article 81. These actions deprived both Jamila and Plaintiff of their

respective rights—Jamila's right to autonomy and Plaintiff's right to familial association, due process, and freedom from retaliatory prosecution.

### III. Jurisdiction and Venue

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3), as Plaintiff asserts claims arising under the Constitution and laws of the United States, including 42 U.S.C. §1983.
2. Venue is proper in the Southern District of New York under 28 U.S.C. §1391(b), as a substantial part of the events giving rise to the claims occurred within this District, and Defendants reside or conduct business within the State of New York.
3. Plaintiff acknowledges that a prior order issued by Justice Giacomo on December 22, 2021, in the New York State Unified Court System, enjoins Plaintiff from initiating future actions in state court against Neelofar Butt and Jamila Butt without judicial permission. This action is filed in federal court pursuant to 42 U.S.C. § 1983 and other federal statutes, and is therefore outside the scope of that state court injunction. Plaintiff respectfully submits that this Court has full jurisdiction to hear the claims asserted herein.

### IV. Parties

3. Plaintiff Javaid Aziz is 81 years old and resides in Cambridge, Middlesex County, Massachusetts. He is the brother of Jamila K. Butt, age 87, and has served as her advocate and support system throughout her elder years. Plaintiff brings this action in his own right and as a friend of Jamila, whose autonomy and familial connections were suppressed through misuse of judicial process.
4. Jamila K. Butt is a vulnerable elderly person currently residing at Brightview Senior Living, located in Tarrytown, New York. She was subjected to isolation and deprivation of rights through extrajudicial control and Family Court proceedings initiated without her consent or judicial oversight under Article 81.
5. Defendant Neelofar Butt is a resident of Tarrytown, New York, and the daughter of Jamila K. Butt. She acted under color of state law by initiating and sustaining Family Court proceedings that deprived Plaintiff of constitutional rights and isolated Jamila from lawful contact and advocacy.
6. Defendant Neil Reig is an elder law attorney licensed in New York, with offices in Mount Kisco, New York. He prepared, notarized, and witnessed the Power of Attorney used to control Jamila K. Butt. He acted under color of law by using legal instruments to bypass judicial oversight and isolate Jamila from Plaintiff and other advocates.

### V. Factual Allegations

1. Plaintiff Javaid Aziz is the brother of Jamila K. Butt, age 87, a vulnerable elderly person currently residing at Brightview Senior Living in Tarrytown, New York. Plaintiff and Jamila maintained regular contact and a close familial relationship until Defendants initiated proceedings that resulted in her isolation.
2. In 2017, following the death of Jamila's husband, Defendants began asserting control over her affairs through a Power of Attorney (POA) and Family Court filings in 2020. These actions were taken without judicial oversight under New York Mental Hygiene Law Article 81, which provides the exclusive statutory framework for determining incapacity and appointing a guardian.
3. Instead, Defendants used the POA to initiate Family Court proceedings and secure a Temporary Order of Protection (TOP) against Plaintiff, without the consent of Jamila, effectively isolating her from her brother, her attorney, and her broader support network.
4. The TOP was issued based on allegations that Plaintiff was interfering with Jamila's care and causing her distress. However, Jamila had initiated contact with Plaintiff multiple times, including phone calls and requests for assistance, contradicting the claim that she wished to avoid contact.
5. Plaintiff was subsequently charged with violating the TOP on three occasions:

    (a) For answering phone calls initiated by Jamila

    (b) For allegedly sending a parcel, which Plaintiff denies

    (c) For contacting police to request a welfare check

6. None of these actions involved threats, harassment, or unlawful conduct. Each was either initiated by Jamila or undertaken by Plaintiff out of concern for her well-being.
7. Despite the seriousness of the allegations, no guardianship proceeding was ever initiated under New York Mental Hygiene Law Article 81, which provides the exclusive statutory framework for determining incapacity and appointing a guardian. Instead, Defendants relied on a privately executed Power of Attorney to assert control over Jamila's personal affairs and substantial assets, bypassing judicial safeguards and excluding Plaintiff from decisions affecting Jamila's welfare.

**8.** The POA dated August 9, 2017 spans 18 pages and was prepared, notarized, and witnessed entirely by Defendant Neil Reig and his staff. Plaintiff asserts(as told by Jamila), that Jamila was unaware of its execution and did not sign the document.

**9.** According to an affidavit submitted by Reig, Jamila was sent the document and later came to his office to sign it. However, Jamila told Plaintiff that she never signed the document and was unaware of its execution. At the time, Jamila was 80 years old,

3

mourning the recent death of her husband, and living independently with full cognitive awareness. The document includes broad powers that were later used to initiate Family Court proceedings against Plaintiff. The petition for the Temporary Order of Protection was also prepared by Defendant Reig and relied on the POA as its foundation. It was presented to the Court without Jamila's consent and resulted in her isolation from Plaintiff, her attorney, and her broader support network—and enabled control over her substantial assets.

**10.** Plaintiff asserts that Jamila's continued contact supports the position that the TOP was imposed without her independent will, medical evaluation, or judicial review under Article 81.

**11.** Defendant Neelofar Butt stated under oath in multiple courts that Jamila suffered from dementia. Plaintiff asserts that these sworn statements, made without any adjudication of incapacity under Article 81, were materially false and used to justify isolation and control.

**12.** Plaintiff asserts that Jamila was never provided copies of these documents, and that when her retained attorney, Khalid Azam, requested them, Defendant Reig refused to supply them.

**13.** Following this request, Defendant Reig initiated Family Court proceedings to obtain a TOP against Plaintiff. His petition included Khalid Azam's name, though the Court ultimately excluded Azam from the order. The proceedings continued without adjudication under Article 81 and resulted in Plaintiff's isolation from Jamila.

**14.** On December 2, 2021, Judge Wayne A. Humphrey recused himself from the matter and declared a mistrial. On the record, Judge Humphrey stated:    "Dr. Butt and I worked on probably half a dozen sex abuse investigations… I did not recognize her full name because I only always called her Neelo Butt or Dr. Butt."    "All right. Sorry. And I apologize for not recognizing the relationship and potential conflict I had with Dr. Butt."

**15.** This disclosure reveals that Judge Humphrey had a prior professional relationship with Defendant Neelofar Butt, which was not disclosed at the outset of proceedings. The recusal occurred only after trial had commenced, following nearly two years of sustained isolation of Plaintiff under the TOP.

**16.** On February 25, 2020, during the initial hearing in Family Court, *In the Matter of: Neelofar Butt O/B/O Jamila Butt v. Javaid Aziz*, Family Unit No. 160818, Docket No. O-01899-20, held at White Plains Family Court, Judge Humphrey directly questioned whether a guardianship proceeding had been initiated.

**17.** The following exchange occurred on the record:    **THE COURT:** Is there any guardianship order regarding this petitioner?    **Ms. BUTT:** No, Your Honor.    **THE COURT:** Is your client going to be making an application for guardianship over here?    **Ms. BOSSHART:** Not at this time, Judge.    **THE COURT:** So I don't know if this is the right avenue for you to be seeking an Order of Protection versus seeking guardianship over the person.( Ms. Bosshart was the Attorney standing in Court for Attorney of Record Neil Reig).

**18.** Plaintiff asserts that this in-court admission is dispositive: Defendants knowingly bypassed New York Mental Hygiene Law Article 81, despite alleging incapacity, and instead used Family Court to impose control without judicial review, medical evaluation, or statutory compliance.

**19.** The case was subsequently reassigned to Judge Arlene A. Gordon. Upon review of the record at a conference hearing on March 29, 2022, Judge Gordon expressed concern regarding the prolonged duration of the Temporary Order of Protection and the absence of substantive adjudication.

**20.** Judge Gordon stated on the record:    "This case has been pending long enough in this Court. Seven hundred and fifty-six days."    "Family courts hear very serious allegations… and although you might believe in your heart of hearts that [it] rises to a certain level, case law [and] facts might not determine same, petitioner."

**21.** During a brief recess, Neelofar Butt's attorney privately offered to forgive the $21,586.46 judgment against Plaintiff (awarded to Neelofar for her attorney's fees) if he agreed to cease contact with Jamila. Plaintiff declined the offer, asserting his right to familial association and his commitment to Jamila's autonomy.

**22.** Upon resuming, Judge Gordon stated:    "The job of the family court is to find a way—whatever possible, whenever possible—to reunite families."    "And I'm sure that the protective party would—if she was aware of what's occurring on her behalf—might not be that thrilled and would maybe want some peace in the family."

**23.** Plaintiff asserts that Judge Gordon's remarks suggest the case was prolonged without a clear factual or statutory foundation, and that Jamila herself may not have been aware of or in agreement with the actions taken in her name.

**24.** Plaintiff asserts that this hearing further confirms the misuse of Family Court as a substitute for guardianship, and that the prolonged enforcement of the Temporary Order of Protection was not grounded in adjudicated incapacity or genuine protective need.

**25.** The offer made during the recess—where Neelofar Butt's attorney proposed forgiving the $21,586.46 judgment (awarded to Neelofar for her attorney's fees) in exchange for Plaintiff agreeing to cease contact with Jamila—demonstrates that the proceedings were being used as leverage, not as a protective mechanism. Plaintiff declined the offer, affirming his commitment to lawful advocacy and his sister's autonomy.

**26.** On May 6, 2022, Defendant Neelofar Butt formally withdrew her petition by submitting a letter to Judge Gordon. This withdrawal followed a hearing in which the Court expressed concern over the prolonged duration of the Temporary Order of Protection and the absence of substantive adjudication. Plaintiff asserts that Neelofar recognized the lack of merit in the three allegations she had filed on February 25, 2020, and that Judge Gordon's repeated emphasis on "merit" and judicial economy made continued prosecution untenable. Faced with mounting judicial scrutiny and the absence of evidentiary support, Neelofar elected to withdraw rather than proceed to trial. The Court terminated the Temporary Order of Protection on May 20, 2022, without any trial or adjudication of the underlying allegations.

**27.** At the time of termination, the order remained classified as "temporary," despite having been in effect for over two years. No guardianship proceeding had ever been initiated, and no judicial finding of incapacity was ever made.

**28.** The plaintiff asserts that the record now reflects a sustained deprivation of rights—both his and Jamila's—through procedural evasion, retaliatory filings, and misuse of judicial process under color of law.

**29.** Defendant Neelofar Butt appeared in Family Court three times (in person to be able to be recognized by the Judge), in connection with the TOP. She filed three separate criminal complaints against Plaintiff, alleging violations of the order.

**30.** One complaint was based on phone calls initiated by Jamila herself. Another falsely alleged that Plaintiff sent a parcel, and a third claimed that Plaintiff contacted police for a welfare check.

**31.** These actions—none of which involved threats or unlawful conduct—were mischaracterized as criminal offenses. Plaintiff's intent was to maintain contact with his sister and ensure her safety. The filings were retaliatory and designed to suppress Plaintiff's familial role, not to protect Jamila.

**32.** Plaintiff did not inform Jamila of the ongoing court proceedings, believing that disclosure could cause her emotional distress and jeopardize her health. At the time, Plaintiff did not fully understand the seriousness of the Temporary Order of Protection or

its legal implications. He believed in his own innocence and assumed that the matter would eventually be heard and resolved on its merits. The unlawful actions of Defendants in obtaining the TOP—without Jamila's consent and based on materially false allegations—placed Plaintiff in a legally precarious and emotionally distressing situation, despite his complete innocence. His conduct was guided by caution, compassion, and a sincere belief that the truth would prevail—not by defiance or disregard for the law.

**33.** Plaintiff asserts that the sustained enforcement of the Temporary Order of Protection over nearly two years—despite Jamila's continued outreach and absence of judicial guardianship—constituted a clear misuse of process. The order was not protective in nature, but punitive and retaliatory, designed to sever familial ties and suppress lawful advocacy.

**34.** The removal of Jamila's communication devices in October 2020 further confirms the intent to isolate her from Plaintiff, and was executed without any judicial oversight or medical justification.

**35.** On November 12, 2020, during a virtual Family Court hearing, Neelofar Butt's attorney falsely stated that Jamila Butt "fell at her assisted living facility," resulting in "two broken arms, a broken cheek, and a broken nose." In truth, Jamila was residing independently in her exclusive one-bedroom unit (#238) at Brightview Senior Living, without custodial oversight or assisted care. The injuries occurred while she was alone in her apartment, not in an assisted living context. This misrepresentation was used to imply incapacity and to justify an expansion of the existing Order of Protection against Plaintiff.

During the same hearing, Plaintiff's counsel correctly stated that if Jamila had become incapacitated, any power of attorney held by Neelofar would no longer be durable or valid. Despite this, Neelofar sought to expand the Order of Protection based on an unverified allegation that Plaintiff had sent a parcel to Jamila. The Court granted the expansion, barring Plaintiff from visiting Jamila in the hospital during a medical crisis—without adjudicating incapacity, without Jamila's input, and without medical or statutory justification. This action furthered Jamila's isolation and deprived Plaintiff of lawful, compassionate contact with his sister under color of law.

**36.** Plaintiff contends that if Jamila had genuinely sought protection from Plaintiff, she would not have initiated daily phone contact during the period in which the TOP was in effect. Her actions contradict the narrative presented by Defendants and affirm her desire for continued connection.

**37.** Plaintiff further asserts that the failure to invoke Article 81—despite repeated claims of incapacity—was not an oversight, but a deliberate evasion of statutory safeguards. This omission deprived Jamila of her right to judicial review and deprived Plaintiff of his constitutional rights under color of law.

**38.** The procedural sanctions imposed on Plaintiff, including the $21,586.46 judgment and filing restrictions, were rooted in proceedings that lacked statutory foundation and were sustained without adjudication.

**39.** Plaintiff was denied access to his sister, denied the opportunity to contest allegations through a proper guardianship proceeding, and denied procedural fairness in both Family Court and related criminal filings.

**40.** The harm to Plaintiff was direct and personal: he was isolated from his sister, sanctioned without due process, and barred from future filings. These injuries were inflicted under color of law and constitute actionable violations of the First and Fourteenth Amendments.

**41.** Plaintiff asserts that Jamila's autonomy was suppressed through extrajudicial control, and that her statutory rights under Article 81 were bypassed in favor of a privately executed POA used to impose isolation and control over her personal affairs and substantial assets.

**42.** Plaintiff brings this action to vindicate his own rights and to affirm the dignity and autonomy of Jamila K. Butt, whose voice was silenced through procedural evasion and misuse of judicial process.

**VI. Legal Claims**

**Count I – Violation of Plaintiff's First and Fourteenth Amendment Rights (42 U.S.C. §1983)** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants acted under color of state law by initiating and sustaining Family Court proceedings, including the issuance and enforcement of a Temporary Order of Protection (TOP), without lawful basis or judicial oversight under New York Mental Hygiene Law Article 81.

These actions deprived Plaintiff of his constitutional right to familial association with his sister, Jamila K. Butt, in violation of the First and Fourteenth Amendments to the United States Constitution.

The deprivation was not narrowly tailored to serve any compelling state interest and was sustained through materially false representations, including sworn statements that Jamila suffered from dementia, without any adjudication of incapacity.

Plaintiff was further subjected to retaliatory criminal filings and procedural sanctions designed to suppress his lawful advocacy and familial role.

The record now includes judicial remarks expressing concern over the merit and duration of the proceedings, and confirming that no guardianship proceeding was ever initiated. Despite this, Defendants continued to use Family Court as a substitute for Article 81, sustaining the TOP for over two years without adjudication.

**Count II – Violation of Procedural Due Process (42 U.S.C. §1983)** Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants deprived Plaintiff of liberty interests protected by the Fourteenth Amendment, including the right to maintain familial contact and to participate in decisions affecting his sister's welfare.

These deprivations occurred without notice, hearing, or adjudication under Article 81, which provides the exclusive statutory framework for determining incapacity and appointing a guardian.

Defendants knowingly bypassed this framework, opting instead to use a Power of Attorney prepared and executed without judicial oversight, medical evaluation, or neutral witnessing. This extrajudicial instrument was then used to initiate Family Court proceedings that resulted in the prolonged enforcement of a Temporary Order of Protection against Plaintiff.

Despite repeated assertions that Jamila K. Butt suffered from dementia and required protection, Defendants never initiated an Article 81 guardianship proceeding. Their refusal to do so deprived Jamila of her statutory right to judicial review and deprived Plaintiff of his liberty interest in maintaining familial contact and participating in decisions affecting his sister's welfare.

The Family Court proceedings were sustained for over two years without adjudication of capacity, without a hearing on the merits, and without any finding that Plaintiff posed a threat to Jamila. The record now includes judicial remarks expressing concern over the duration, merit, and procedural posture of the case—further confirming that Plaintiff was denied due process under color of law.

**Count III – Abuse of Process and Retaliatory Prosecution (42 U.S.C. §1983)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants used Family Court proceedings and criminal complaints not to protect Jamila K. Butt, but to retaliate against Plaintiff for his lawful advocacy, familial contact, and efforts to preserve Jamila's autonomy. The process was not used for its intended purpose—it was weaponized to isolate Jamila and suppress Plaintiff's constitutional rights.

Defendants filed three separate criminal complaints against Plaintiff, each alleging violations of the Temporary Order of Protection. These included:

- A complaint based on phone calls initiated by Jamila herself
- A complaint falsely alleging that Plaintiff sent a parcel
- A complaint asserting that Plaintiff contacted police for a welfare check

None of these actions involved threats, harassment, or unlawful conduct. Each was either initiated by Jamila or undertaken by Plaintiff out of concern for her well-being. The complaints were retaliatory in nature and designed to silence Plaintiff's advocacy, not to protect Jamila.

Plaintiff was further sanctioned and barred from future filings, compounding the harm and suppressing his ability to challenge the misuse of process. These actions, taken under color of law, constitute abuse of process and retaliatory prosecution in violation of Plaintiff's rights under the First and Fourteenth Amendments and are actionable under 42 U.S.C. §1983.

Defendants' conduct was not incidental or negligent—it was deliberate, sustained, and executed through misuse of judicial process. By initiating Family Court proceedings without pursuing guardianship, by filing retaliatory criminal complaints based on lawful and compassionate actions, and by sustaining a Temporary Order of Protection for over two years without adjudication, Defendants weaponized state mechanisms to suppress Plaintiff's constitutional rights.

The harm to Plaintiff was direct and personal: he was isolated from his sister, sanctioned without due process, and barred from future filings. These injuries were not incidental—they were the foreseeable result of Defendants' deliberate misuse of judicial process under color of law.

Plaintiff was denied access to his sister, denied the opportunity to contest allegations through a proper guardianship proceeding, and denied procedural fairness in both Family Court and related criminal filings. The sanctions imposed against him, including

the $21,586.46 judgment and filing restrictions, were rooted in proceedings that lacked statutory foundation and were sustained without adjudication.

Defendants' actions caused emotional distress, reputational harm, and a chilling effect on Plaintiff's lawful advocacy. The deprivation of familial association, compounded by retaliatory prosecution and procedural suppression, constitutes a violation of Plaintiff's rights under the First and Fourteenth Amendments and is actionable under 42 U.S.C. §1983.

Plaintiff respectfully seeks declaratory and compensatory relief for these constitutional injuries and asks this Court to recognize the misuse of process that enabled them.

Plaintiff further requests that this Court issue appropriate relief to restore his constitutional rights and to prevent future misuse of judicial process under color of law. The injuries sustained were not abstract—they were personal, sustained, and rooted in deliberate procedural evasion. Plaintiff was denied access to his sister, subjected to retaliatory filings, and silenced through sanctions imposed without lawful foundation.

The record now reflects not only the deprivation of rights, but also judicial concern over the legitimacy and duration of the proceedings. Plaintiff asserts that these harms are ongoing in effect, and that declaratory relief is necessary to clarify the constitutional violations and prevent recurrence.

Plaintiff respectfully submits this complaint to vindicate his own rights and to affirm the dignity and autonomy of Jamila K. Butt, whose voice was suppressed through extrajudicial control. The misuse of process described herein warrants recognition, redress, and accountability under federal law.

### VII. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants, acting under color of state law, violated Plaintiff's constitutional rights under the First and Fourteenth Amendments by depriving him of familial association, procedural due process, and protection from retaliatory prosecution.
2. Declare that the use of a Power of Attorney to bypass New York Mental Hygiene Law Article 81 and isolate Jamila K. Butt constituted a deprivation of her statutory protections and Plaintiff's constitutional interests.
3. Issue interim relief sua sponte, should the Court find sufficient urgency or ongoing harm, including:    (a) Permitting Plaintiff to visit Jamila K. Butt without

   interference by Defendant Neelofar Butt, unless such visitation is lawfully restricted by a valid guardianship order issued under Article 81.
4. Award compensatory damages to Plaintiff for emotional distress, reputational harm, and procedural retaliation, in an amount to be determined at trial.
5. Grant such other and further relief as the Court deems just and proper.

**VIII. Jury Trial Demand**

**Respectfully submitted,**     Dated: September 14, 2025

   /Sd/

Javaid Aziz

 Pro Se Plaintiff and Attorney-in-Fact/next friend for Jamila K. Butt

131 Reed Street Cambridge, MA 02140

 Phone:  (617) 642-9058

Email: javaid.aziz@gmail.com

12